**In re SB PROPERTIES, INC., Debtor.**

**Bankruptcy No. 95–10539 SR.**

United States Bankruptcy Court,
E.D. Pennsylvania.

May 2, 1995.

John J. Koresko, V, Koresko & Associates, Norristown, PA, for debtor.

Jeffrey G. Trauger, Grim, Biehn, Thatcher & Helf, Perkasie, PA, for Mary Scatton.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction.

Before the Court is the Motion of Mary Scatton, Executrix of the Estate of John P. Scatton ("Movant") for relief from the Automatic Stay. The Motion is opposed by the Debtor S.B. Properties, Inc. ("Debtor"). A hearing was held on March 16, 1995, and the parties have each submitted legal memoranda in support of their respective positions. For the reasons discussed herein, the Motion must be denied. However, in the Court's view the circumstances warrant dismissal of the instant Chapter 11 case for cause pursuant to 11 U.S.C. § 1112(b). The Bankruptcy case shall therefore be dismissed.

### Background.

Few of the salient facts are in dispute. In 1965, a Pennsylvania general partnership known as Scatton Brothers Properties (the "Partnership") was formed between John P. Scatton, Peter M. Scatton and Christina M. Masucci. Each individual held a 1/3 partnership interest. The sole asset of the Partnership at all relevant times has been a 37,000 square foot manufacturing facility located at 284 Wissahickon Avenue, North Wales, Pennsylvania (the "Property"). Since its acquisition by the Partnership, the Property has been occupied under lease by Scatton Brothers Manufacturing Co., a Pennsylvania corporation owned or controlled by Masucci. In 1989, John Scatton moved to dissolve the Partnership and wind up its affairs. Eventually he commenced an equity action in the Montgomery County Court of Common Pleas at Docket 89-14658 towards this end. John Scatton died on October 2, 1989, and the Movant, Mary Scatton, his wife, became his Executrix and was substituted in his place as Plaintiff in the pending Montgomery County Common Pleas action. Litigation between the partners ensued in the Montgomery County action over the next few years. In August of 1992, another of the Partners, Peter M. Scatton, died and his 1/3 interest in the Partnership was transferred by his Executrix to Masucci, thus leaving Masucci with a 2/3 ownership interest in the Partnership, and leaving the Movant, with the remaining 1/3 interest.

Thereafter, litigation between the Movant and Masucci continued on in the Montgomery County Court of Common Pleas over disposition, by liquidation or otherwise, of the Partnership's single asset; to wit: the Property. The matter had apparently reached an impasse by August of 1994, at which time the State Court was considering the appointment of a receiver for the Partnership. Although that did not occur, in October 1994, the State Court appointed an appraiser to determine the fair market value of the Property and also its fair rental value. Before the appraiser completed his work, Masucci formed the Debtor corporation and, as the owner of a controlling interest in the Partnership, merged the Corporation and Partnership pursuant to the provisions of 15 Pa.C.S.A. §§ 1921(c), 1926. This action was taken on January 19, 1995. One day later, on January 20, 1995, Masucci, as president and 2/3 shareholder of the Debtor commenced this instant Chapter 11 case.

The Movant's request for relief from the automatic stay is, as the Debtor correctly observes, technically flawed. The Motion, which seeks relief from the automatic stay for the purpose of returning to conclude the wind up of the Partnership's affairs in the still pending State Court proceeding, represents in reality simply an expression of the Movant's outrage that the Debtor has acted as it has and, in doing so, derailed the State Court proceeding which had been underway

for almost six years, and which the Movant believed would soon be nearing conclusion. Unfortunately, a motion for relief from the automatic stay is an unavailing course of action for the relief the Movant seeks, since relief from the automatic stay to commence or continue litigation against a debtor in State Court is rarely granted to parties in interest, other than secured creditors. There is nevertheless, an alternative and, in this Court's view, appropriate, basis to effectively grant to the Movant the relief it has requested; to wit: dismissal for cause under 11 U.C.C. § 1112(b).

### Discussion.

■ Under the provisions of 11 U.S.C. § 1112, the Court may convert or dismiss a proceeding under Chapter 11 for cause, as follows:

**11 USCS § 1112. Conversion or dismissal.**

(b) Except as provided in subsection (c) of this section, on request of a party in interest *or the United States Trustee* or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; [or]

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) *nonpayment of any fees or charges required under chapter 123 of title 28 [28 USCS §§ 1911 et seq.]*

■ At the hearing on March 15, 1995, counsel for the Movant verbally requested that, to the extent Movant's Motion for Relief was defective, the Court consider it amended so as to request dismissal of the proceeding. Regardless of whether this verbal amendment is any respect procedurally deficient, numerous courts have held that the Court on its own motion may *sua sponte* dismiss a proceeding under § 1112(b) of the Bankruptcy Code. *In re Harvey Probber, Inc.,* 44 B.R. 647, (Bankr.D.Mass.1984); *Furness v. Lilienfield,* 35 B.R. 1006, (D.Md.1983); *In re Nikron, Inc.,* 27 B.R. 773, (Bankr.E.D.Mich. 1983); *In re Dailey,* 36 B.R. 147, (Bankr. D.Minn.1983). Other Courts have held to the contrary. *In re Gusam Restaurant Corp.,* 737 F.2d 274, (2d Cir.1984); *In re Warner,* 30 B.R. 528, (9th Cir. BAP 1983); *In re Moog* 774 F.2d 1073, (11th Cir.1985). There does not appear to be dispositive law on this point in this Circuit, however, this Court views those decisions which uphold the Bankruptcy Court's authority to dismiss a case on its own initiative as representing the better view.

■ Case law makes clear that the enumeration of matters which constitute "cause" for dismissal in 11 U.S.C. § 1112(b) is intended to be illustrative and not inclusive. *In re Cohen,* 173 B.R. 950 (Bankr.S.D.Fla.1994). In this instance, the Court finds there is good reason to dismiss this Bankruptcy case. First and foremost, it is manifestly clear that this is simply a two party dispute. In an effort to suggest otherwise at the hearing of March 15, 1995, Debtor's counsel argued, and Masucci testified, as to the existence of creditors and the Debtor's desire to satisfy their claims through the confirmation of a reorganization plan. A review of the Schedules filed by the Debtor in this case, however, belies any such contention. The Schedules

filed in this case by the Debtor reflect a single asset; to wit: the Property. Beyond this, the Schedules reflect a total of $169 in personal property; one secured claim, being a mortgage in the amount of $480,000; and one unsecured creditor without priority, being the Township of Upper Gwynned for real estate taxes in the amount of $3,043.27. Other than this, the Schedules reflect four unsecured non-priority claims, as follows:

| | | |
|---|---|---|
| Additions & Enclosures | Business Loan | $ 600.00 |
| Estate of Peter M. Scatton | Redemption of Equity | $116,705.00 |
| Scatton Bros. Mfg. Co. | Business Loan | $427,596.47 |
| Scatton Bros. Mfg. Co. | Advance Rent | $ 11,805.70 |

On the basis of the above, it is readily apparent that the only reason for the instant bankruptcy filing is to have this Court, as opposed to the Montgomery County Court of Common Pleas, resolve the disputes of the partners, *inter se*, and finalize the wind up of the former partnership and its Property. Masucci does not really contend differently. She indicated as much in her testimony and expressed the opinion that a wind up supervised by the Bankruptcy Court would be a quicker way to resolve outstanding matters between the Movant and herself, rather than continuing to seek a resolution of those matters in the Montgomery County Court, with whose supervision she had grown dissatisfied. Further, confirming this conclusion are the generally suspect facts that 1) the Debtor itself is a contrived entity formed by Masucci one day prior to the bankruptcy filing for the very purpose of undertaking the filing, and 2) the Debtor itself is a shell corporation but for the assets of the former partnership transferred to it by Masucci on the day the Debtor corporation was formed. Under these circumstances, the Court is hard pressed to conclude that the instant bankruptcy filing represents nothing other than mere forum shopping.

Having so concluded, the Court is quick to note that it does not see dismissal of this case as being determined by the presence or absence of subjective good faith on the part of Masucci. In this respect, at the hearing of March 15, 1995, Debtor's counsel, after initially agreeing that there was little dispute as to the operative facts, indicated (in response to the Court's inquiry) a desire to have Masucci testify and explain to the Court why in her view it was more appropriate for this Court to undertake supervision of the wind up of the Partnership's (now corporation's) affairs. During the course of this examination, counsel sought, but the Court curtailed, a more extensive inquiry into the background of the partners' relationship *inter se* and their six years of litigation in the Montgomery County Court of Common Pleas. The Court, while not agreeing with counsel's assertion that there is no good faith requirement to the filing of a case under Chapter 11, curtailed this inquiry because, in the first instance, it exceeded the purposes for which the witness' testimony had been offered. More importantly, however, the Court again does not view the subjective state of mind of Masucci as being determinative. What is determinative, are the objective indicia of bad faith which this case bears. In that regard, the Court again reiterates that this is essentially a two party dispute which was obviously commenced for the sole purpose of relocating pending litigation over the liquidation of the Property from the Montgomery County Court of Common Pleas to this Court. In this regard, the Court again underscores the facts that 1) the Property is the only asset of the Debtor, 2) the Debtor has no employees, 3) the Debtor conducts no business other than ownership of the Property and its rental to Masucci's company, 4) the Debtor has no significant creditors other than a mortgagee and 5) the Debtor was formed on the eve of the bankruptcy filing at which time its only asset was transferred to it from the former Partnership.

The testimony and arguments of counsel make clear that Masucci and the Movant differ sharply over the value of the Property.

This no doubt accounts in part for the lengthy course of their State Court litigation. It is irrelevant to this Court that Masucci in good faith believes that the dispute can be brought to a quicker resolution at this juncture in this Court. For present purposes, the Court will accept both the sincerity and the accuracy of her views. The fact remains, however, that the jurisdiction of this Court has been invoked for an improper purpose in this instance. Accordingly, the Court concludes that the Bankruptcy case has been filed in bad faith and this case must therefore be dismissed.[1]

An appropriate Order consistent with the foregoing conclusions will be entered herewith.

---

1. *In re Natural Land Corporation,* 825 F.2d 296 (11th Cir.1987); *In re Phoenix Piccadilly Limited,* 849 F.2d 1393 (11th Cir.1988); *In re East West Associates,* 106 B.R. 767 (S.D.N.Y.1989); *In re Tiffany Square Associates Limited,* 104 B.R. 438 (Bankr.M.D.Fla.1989)